IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE ESSAR STEEL MINNESOTA LLC and ESML HOLDINGS INC., | : : | Chapter 11 Case No. 16-11626 (CTG) |
| Reorganized Debtors. | : : | (Jointly Administered) |
| _____ | : | |
| CLEVELAND-CLIFFS MINNESOTA LAND DEVELOPMENT LLC, | : : : | |
| Appellant, | : | Adv. No. 18-50416 (CTG) |
| v. | : : | |
| MIRANDA MINERAL RESOURCES, LLC and MESABI METALLICS COMPANY LLC, | : : : | Civ. No. 25-306-GBW |
| Appellees. | : : | |

**MEMORANDUM OPINION**

## I.    INTRODUCTION

The above-captioned adversary proceeding,[1] referred to by the parties as the "560 Action," presents a dispute as to which of two parties should be permitted to mine certain mineral lands in northern Minnesota. The action is premised on Minnesota Statutes §§ 560.01, *et seq.* ("Chapter 560"), and "the policy of the state [of Minnesota] to provide for the diversification of the state's mineral economy through long-term support of mineral exploration, evaluation, environmental research, development, production, and commercialization." Minn. Stat. § 93.001. Chapter 560 provides the structure for a summary declaratory proceeding that allows an "owner or owners of a half interest or more in mineral land" to "bring an action for permission to mine." Minn. Stat. § 560.01, subd. 1. "The decision must be based on the properly executed deeds or leases recorded in the county where

---

[1] The docket of the chapter 11 cases, captioned *In re Essar Steel Minnesota LLC*, No. 16-11626 (CTG) (Bankr. D. Del.), is cited herein as "B.D.I. __." The docket of the adversary proceeding, captioned *Cleveland Cliffs Minnesota Land Development LLC v. Miranda Mineral Resources, LLC*, Adv. No. 18-50416 (CTG) (Bankr. D. Del.), is cited herein as "Adv. D.I. __."

the land is." Minn. Stat. § 560.02, subd. 2. Upon a showing of 50% ownership, "the court must make an order allowing the complainant to enter on and mine the land." Minn. Stat. § 560.03, subd. 1.

The two parties that assert rights to the mineral lands at issue in the 560 Action are (1) plaintiff Cleveland-Cliffs Minnesota Land Development LLC (together with various affiliates, "Cliffs"), and (2) defendant Miranda Mineral Resources, LLC (referred to as "Miranda Mineral"), an affiliate of defendant Mesabi Metallics Company ("Mesabi", and together with Miranda Mineral, as the "Mesabi Parties"). Each of the parties seeking to mine the land holds an interest of exactly 50 percent. The parties eventually agreed[2] that which party should be entitled to mine the land should be decided by Minnesota state courts, but they disputed when and how the litigation should proceed in light of other pending litigation.

Relevant here, the Mesabi Parties filed a motion asking the Bankruptcy Court to abstain from hearing the merits of the 560 Action and to remand the dispute to Minnesota state court. Cliffs opposed remand and moved to stay the 560 Action, arguing that the outcome of a related case currently pending before this Court (the "Antitrust Action") may affect the 560 Action. In opposition to the motion to remand (and in support of its motion to stay), Cliffs argued that remand runs the risk of inconsistent rulings, as the Antitrust Action remains pending and the prior rulings in that case have not become final and nonappealable. Cliffs therefore took the position that Bankruptcy Court should (1) deny the motion to abstain and remand in favor of staying the case until a final order is entered in the Antitrust Action, or (2) if the Bankruptcy Court decided to abstain, to certify unsettled questions of law to the Minnesota Supreme Court. The Bankruptcy Court agreed with the Mesabi Parties for the reasons set forth in its Remand Opinion dated February 19, 2025.

---

[2] While the history of the parties' dispute and ensuing litigation is lengthy, the relevant background is set forth in detail in the Bankruptcy Court's thorough Memorandum Opinion. (*See* Adv. D.I. 119 (the "Remand Opinion") at 1-11.) As the Court writes primarily for the parties, and considers the Emergency Motion on an expedited basis, the relevant background is not repeated herein.

The Bankruptcy Court noted that "no party is still suggesting that this Court go forward with this claim arising under Minnesota law that is principally between non-debtor parties." (Remand Op. at 5.)   After setting forth in detail the context of the parties' long standing litigation, which commenced in 2017 (*see id.* at 1-11), the Bankruptcy Court considered the applicable factors and determined that they weighed strongly in favor of abstaining. (*See id.* at 12-16.) The Bankruptcy Court further determined that permissive abstention, made, as here, in "the interest of justice, or in the interest of comity with State courts or respect for State law" falls under the "any equitable ground" provision of 28 U.S.C. § 1452(b), and that remand was also appropriate. (*Id.* at 16.) In so deciding, the Bankruptcy Court squarely addressed Cliffs' concerns that remand runs the risk of inconsistent rulings:

> Cliffs is concerned that Mesabi will argue before the Minnesota state court that [the Bankruptcy Court, in a prior ruling] was wrong to find that its lease on Glacier Park's 50 percent interest in the property was rejected when it failed to meet the October 31, 2017 deadline. It also expresses concern that Mesabi will contend that Cliffs' ownership of that interest should be ignored on the ground that its acquisition was anticompetitive, an assertion that it is now contesting before the district court.
>
> The Court does understand these concerns and agrees that all things being equal, they might counsel in favor of staying the Section 560 action until the disputes described above were definitively resolved. But everything else is not equal. A principal concern that animates this Court's judgment that it should abstain from the case is that it involves a novel question of Minnesota law. Principles of comity and respect for the role of the Minnesota courts as the arbiters of close questions of Minnesota law thus counsel strongly in favor of sending this dispute back to the Minnesota courts. And it is clear from even a cursory review of Section 560 that one of the goals of the statute is ensuring that the lands in the state be put to appropriate and productive use. As a result, deciding to leave this case on ice for an indefinite period of time (until a decision in the antitrust action becomes final and nonappealable) is itself to make a decision to subordinate that interest of Minnesota law.

(*Id.* at 16-17.) Thus, "for the same reasons that the merits of the Section 560 action are better resolved by the Minnesota courts, so too is the question whether that action should proceed now or await a decision from the district court in the antitrust case." (*Id.* at 6.)

Accordingly, on March 10, 2025, the Bankruptcy Court entered its order (Adv. D.I. 122) (the "Remand Order"), permissively abstaining from hearing the merits of the 560 Action and equitably remanding the case to the Minnesota District Court for Itasca County, where the mineral lands are situated and where the action was originally filed. The Bankruptcy Court further granted "a limited 14-day administrative stay of the effectiveness of the remand order, so as to permit the district court to consider a motion for a further stay, should Cliffs seek such a stay from the district court." (Remand Order at 2.)

Before the Court is Cliff's Emergency Motion for Temporary Stay, Expedited Briefing, and Stay Pending Appeal (D.I. 3, 4) ("Emergency Motion") seeking a stay of the Remand Order pending its appeal. On March 13, 2025, this Court issued an order (1) granting Cliffs' request for expedited briefing of the Emergency Motion and setting a briefing schedule, and (2) granting Cliffs' request to extend the 14-day administrative stay (the "Temporary Stay") set forth in the Remand Order pending this Court's decision on the Emergency Motion. (D.I. 6.) The Emergency Motion is fully briefed. (D.I. 3, 4, 11, 13.) No party requested oral argument. For the reasons set forth below, the Emergency Motion will be denied and the Temporary Stay will be lifted.

## II.    JURISDICTION AND APPLICABLE STANDARDS

Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158. District courts have mandatory jurisdiction to hear appeals "from final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1). The Remand Order abstaining and remanding the 560 Action pursuant to 28 U.S.C. § 1334(c)(1) and § 1452(b) is a final order.

### A.    Stay Pending Appeal

"The granting of a motion for stay pending appeal is discretionary with the court." *In re Trans World Airlines, Inc.*, 2001 WL 1820325, at *2-3 (Bankr. D. Del. Mar. 27, 2001).  Cliffs bears the burden of proving that a stay of the Remand Order is warranted based on the following criteria: (1) whether the movant has made "a strong showing" that it is likely to succeed on the merits; (2) whether the movant will be irreparably injured absent a stay; (3) whether a stay will substantially injure other interested parties; and (4) where the public interest lies.  *Republic of Philippines v. Westinghouse Electric Corp.*, 949 F.2d 653, 658 (3d Cir. 1991).  The "most critical" factors, according to the Supreme Court, are the first two: whether the stay movant has demonstrated (1) a strong showing of the likelihood of success, and (2) that it will suffer irreparable harm—the latter referring to harm that cannot be prevented or fully rectified by a successful appeal. *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).  The Court's analysis should proceed as follows:

> Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) *and* (b) [it] will suffer irreparable harm absent a stay?  If it has, we balance the relative harms considering all four factors using a 'sliding scale' approach.  However, if the movant does not make the requisite showings on either of these first two factors, the inquiry into the balance of harms and the public interest is unnecessary, and the stay should be denied without further analysis.

*Revel AC*, 802 F.3d at 571 (emphasis in original) (internal quotations and citations omitted).

### B.    Permissive Abstention and Remand

Permissive abstention may be appropriate "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1).  As the Bankruptcy Court properly noted, courts in this district have developed a list of twelve factors relevant to the evaluation of a request for discretionary abstention: (1) the effect or lack thereof on the efficient administration of the estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of applicable state law; (4) the presence of a related proceeding

5

commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of non-debtor parties. (Remand Op. at 12-13 (citing *In re Laroche Industries, Inc.*, 312 B.R. 249, 253–54 (Bankr. D. Del. 2004).)

"On appeal from [a permissive abstention] order of the Bankruptcy Court, this court reviews the Bankruptcy Court's 'exercise of discretion for abuse thereof.'" *In re Tonopah Solar Energy, LLC*, 2022 WL 958117, at *6 (D. Del. Mar. 30, 2022). A court abuses its discretion when it "bases its opinion on a clearly erroneous finding of fact, an erroneous legal conclusion, or an improper application of law to fact." *In re Prosser*, 777 F.3d 154, 161 (3d Cir. 2015) (internal quotation marks omitted). "Under the deferential abuse of discretion standard," a decision will be reversed "only where [it] is arbitrary, fanciful, or clearly unreasonable—in short, where no reasonable person would adopt the [] court's view." *In re VistaCare Grp., LLC*, 678 F.3d 218, 232 (3d Cir. 2012) (internal quotation marks omitted).

Under 28 U.S.C. § 1452(b), "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b). Where, as here, permissive abstention is made in "the interest of justice, or in the interest of comity with State courts or respect for State law," a remand based on such abstention falls under the "any equitable ground" provision of § 1452(b). *Allied Signal Recovery Trust v. Allied Signal, Inc.*, 298 F.3d 263, 269 (3d Cir. 2002).

**C.    Judicial Estoppel**

As the doctrine of judicial estoppel is "always factually driven," this Court reviews the Bankruptcy Court's application of judicial estoppel for abuse of discretion. *Danise v. Saxon Mortg. Servs. Inc.,* 738 F. App'x 47, 49 (3d Cir. 2018).

## III.    DISCUSSION

**A.    Likelihood of Success on the Merits**

To show that a stay of the Remand Order is warranted here, Cliffs must first demonstrate that it has "a reasonable chance, or probability, of winning." *In re Revel AC*, 802 F.3d at 568. While it is not enough that the chance of success on the merits be better than negligible, the likelihood of winning on appeal need not be more likely than not. *Id.* at 569.

Because the courts of appeals have "no jurisdiction to review the application of discretionary abstention," "there is little guidance from the Third Circuit" on the factors to be considered in evaluating a motion for discretionary abstention. *In re Tonopah Solar Energy*, 2022 WL 958117, at *8. As noted, the statute simply provides that courts have discretion to abstain "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1).

As an initial matter, there appears to be little dispute that the interests set forth in the text of the statute are present here. Indeed, as Cliffs has previously advocated in its own motion to abstain and remand, "[i]t is evident that state law issues predominate," and "the state's interest in this case is overwhelming." (Adv. D.I. 25 ¶¶ 32-33.) Cliffs further agrees a Minnesota state court should decide these issues, having originally brought this action in the Minnesota court. (*See* Adv. D.I. 1-1 (Cliffs' Complaint filed in Itasca County, Minnesota); *see also* Adv. D.I. 92 (Cliffs' recent motion to certify questions to Minnesota Supreme Court).) Additionally, it is undisputed that Chapter 560 has not previously been applied or interpreted by a Minnesota court, which was a "principal concern that

animate[d] [the Bankruptcy] Court's judgment that it should abstain from the case." (Remand Op. at 17.)

Moreover, as set forth in the Remand Opinion, the twelve factors traditionally considered by courts considering whether to permissively abstain weighed in favor of abstention. (*Id.* at 14.) Notably, the Bankruptcy Court found that any effect on the bankruptcy estate would be *de minimis*, that the dispute was primarily between non-debtor parties, and that degree of remoteness from the main bankruptcy case counseled in favor of abstention. (*See id.*) The Bankruptcy Court further found that state law issues were complex, unsettled, and predominated; the action was non-core, which "implicates no issue of federal bankruptcy law"; and there was no reason to believe that any party was engaging in forum shopping. (*Id.* at 14–15.) The Bankruptcy Court concluded, "a consideration of the factors that courts typically consider in whether to grant a motion for permissive abstention weigh strongly in favor of abstaining here." (*Id.* at 16.)

In equitably remanding this case to the same court in which Cliffs originally brought the 560 Action, the Bankruptcy Court properly referenced the requirements of 28 U.S.C. § 1452(b), which provides that "the court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." The Bankruptcy Court found that "[a] remand based on such abstention, *i.e.*, here, in the interest of comity with the Minnesota state courts so they can decide novel issues of Minnesota state law, falls under the 'any equitable ground' provision of § 1452(b)." (*Id.*) This decision comports with the Bankruptcy Court's statements at oral argument, including that the "quite intricate statutory scheme under Minnesota law that involves … paying money into the Court's registry" meant that it "doesn't make any sense to take place anywhere other th[a]n Minnesota," and that:

> [M]y assumption is that the question whether to move forward and figure out who gets to mine the land or whether to wait is a decision that implicates the interest of the state of Minnesota and its various regulatory concerns and is better made by a judge in Minnesota th[a]n

8

a bankruptcy judge in Delaware out of respect for the sovereignty of
the State of Minnesota and its processes.

(Adv. D.I. 118 ("2/6/25 Hr'g Tr.") at 17:24-18:5; 22:15-21.)

Cliffs' opening brief in support of the Emergency Motion does little to address the twelve

abstention factors, nor does it argue that the Bankruptcy Court applied the incorrect law, made a

clearly erroneous finding of fact, or improperly applied the relevant law to the facts. Cliffs' primary

argument is that there are "serious questions going to the merits" of the Remand Order with respect

to two issues: the risk of inconsistent judgments and the application of judicial estoppel. (*See* D.I. 4

at 13-17.)

### 1.    The Risk of Inconsistent Judgments

As Cliffs points out, some courts in this circuit consider, in addition to the twelve factors cited

above, "the possibility of inconsistent results stemming from the abstention.'" *See In re Strano*, 248

B.R. 493, 504 (Bankr. D.N.J. 2000) (considering this factor in connection with abstention); *Indian

River Homes, Inc. v. Young, Conaway, Stargatt & Taylor,* 1991 WL 171267, *2 (D. Del. Aug. 14,

1991) (considering this factor in connection with remand). Cliffs argues that the risk of an

inconsistent judgment here is substantial and should have precluded abstention and remand. Indeed,

the Bankruptcy Court recognized and considered Cliffs' "fair arguments" regarding why it may be

appropriate to stay this case, but ultimately rejected the risk asserted by Cliffs that the Minnesota state

court would "not understand the limitations and implications" of the prior decision regarding Cliffs'

ownership interests in the 560 Action. (2/6/25 Hr'g Tr. at 42:7-15; 58:25-59:15; 61:1-12.) "Indeed,"

the Bankruptcy Court explained, the reason why it "spilled as much ink as it has on an otherwise

unreviewable decision to remand is because the [Bankruptcy] Court believes that this context may be

helpful to a Minnesota state court in deciding whether it is appropriate to stay the Section 560 action

during the pendency of the antitrust case." (Remand Op. at 17.) "At the end of the day, this Court's

judgment is that the issues of whether and how to deal with the Section 560 action, in light of the pendency of the antitrust case, are issues that are most appropriately resolved by the judge presiding over the Section 560 action, in the exercise of *that* court's discretion." (*Id.* (emphasis in original).) Thus, the Bankruptcy Court ultimately determined that Cliffs' concerns were outweighed by "[p]rinciples of comity and respect for the role of the Minnesota courts as the arbiters of close questions of Minnesota law." (*Id.*)

I agree with the Mesabi Parties that "any risk of inconsistent judgments would only be *one* factor to take into consideration," whereas the Bankruptcy Court concluded that the other factors "weigh strongly in favor of abstaining." (*Id.* at 16.) These include the factors of particular importance, such as the effect on the administration of the bankruptcy estate ("any such effect is *de minimis*"), whether the proceeding is core or non-core ("[t]his is a non-core matter"), and whether state law issues predominate (they do). (*Id.* at 14-15.) As the Mesabi Parties point out, "[i]t is apparently Cliffs' position that even though the majority of the factors weigh overwhelmingly in favor of abstention, risk of inconsistent judgments demands that the Bankruptcy Court deny the motion to abstain" and remand. (D.I. 11 at 23.) I agree that this is not sufficient to show "a reasonable chance, or probability" of prevailing on appeal from the Remand Order.

In support of its position, Cliffs cites *Indian River Homes*, where the court declined to remand one action where that action and two other pending actions all raised the same "basic concerns regarding [a settlement agreement] and its enforceability." *Indian River Homes,* 1991 WL 171267 at *2. The 560 Action, to be decided under state law, and the Antitrust Action, to be decided under federal law, do not raise the same basic questions or issues and will not, as determined in *Indian River Homes,* "result in the unnecessary duplication of litigation and judicial resources." *Id.* Similarly, Cliffs cites *In re Williams*, 256 B.R. 885, 894 (B.A.P. 8th Cir. 2001). But, in that case, as the Mesabi Parties point out, the Bankruptcy Appellate Panel determined there was forum shopping after it made

10

a decision regarding the same underlying dispute, and "perhaps most importantly, … there was, in fact, no state law issue to be decided, and therefore, there was no 'interest of comity' favoring abstention." *Williams*, 256 B.R. at 895.

### 2. Judicial Estoppel

As to judicial estoppel, Cliffs argued that Mesabi should be estopped from seeking remand on the ground that it removed the case to federal court in the first instance. Whether to apply judicial estoppel is a factually driven determination that is within a court's discretion. *Danise*, 738 F. App'x at 49. The Bankruptcy Court determined that the doctrine of judicial estoppel was not applicable here. (*See* Remand Op. at 18-19.) Among other things, the Bankruptcy Court rejected Cliffs' argument in the context of the parties' long history of litigation: noting that "while there may be something to [Cliff's] point, Mesabi could equally contend that Cliffs should be estopped from opposing remand when Cliffs itself filed such a motion earlier in the case." (Remand Op. at 18.) "To be sure, each of the parties each took positions at earlier stages in the case that they believed served their own interests" but that "does not change this Court's determination that these matters are most appropriately resolved by the Minnesota courts." (*Id.* at 18-19.) Cliffs argues that there are serious questions going to the merits of this determination, but it is difficult to see how the Bankruptcy Court's factually driven determination can amount to an abuse of discretion when the parties have equal arguments as to any prior inconsistent positions.

Cliffs asserts that "[t]he Bankruptcy Court did not cite a single case in its brief section on judicial estoppel," and that "[t]his alone may constitute an abuse of discretion." (D.I. 13 at 7.) But Cliffs fails to explain what elements for application of the doctrine of judicial estoppel were otherwise met but disregarded by the Bankruptcy Court. In order for judicial estoppel to apply "there must be (1) irreconcilably inconsistent positions; (2) adopted in bad faith; and (3) a showing that estoppel addresses the harm and no lesser sanction is sufficient." *MD Mall Assocs., LLC v. CSX Transp., Inc.*,

11

715 F.3d 479, 486 (3d Cir. 2013). The doctrine "is an extraordinary remedy that should be employed only when a party's inconsistent behavior would otherwise result in a miscarriage of justice." *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 784 (3d Cir. 2001) (cleaned up); *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003) ("Judicial estoppel is therefore not intended to eliminate all inconsistencies no matter how slight or inadvertent they may be.").

There is no showing that the Mesabi Parties' request for remand, made after bringing its own counterclaims and seven years of further litigation, is an "irreconcilably inconsistent" position. *See MD Mall Assocs.*, 715 F.3d at 486 (in order for judicial estoppel to apply "there must be ... irreconcilably inconsistent positions") (quotation omitted); *see also New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) ("[A] party's later position must be 'clearly inconsistent' with its earlier position."). The facts and circumstances of this case have materially changed since 2018, when Mesabi removed this action to the Bankruptcy Court in Delaware. At that time, only Cliffs' 560 claim was pending, and the parties were litigating whether the BLGN lease was rejected in bankruptcy. Since then, the ownership and leasehold interests in the relevant mineral lands have changed, certain parties to this action and the Antitrust Action have settled and been dismissed, and the main bankruptcy case is largely resolved.

There is no showing that the Mesabi Parties acted in bad faith. Setting aside the fact that the Bankruptcy Court retains the discretion to abstain even without a motion, *Tonopah Solar Energy*, 2022 WL 958117, at *7, the record reflects that the Mesabi Parties brought the remand motion in response to the Bankruptcy Court's question posed at a scheduling hearing on "whether these disputes involving unresolved questions of Minnesota law even belong in this Court." (*See* Remand Op. at 5.) As the Bankruptcy Court said during oral argument, the fact that the Mesabi Parties' remand motion came after the Bankruptcy Court asked, "what are we doing here?" and "not before," "counsel[s]

12

against the notion" that there was "forum shopping where a party is … engaged in tactical behavior." (2/6/25 Hr'g Tr. at 63:6–11.)

Finally, there is no showing that applying the doctrine of judicial estoppel was necessary here to prevent a miscarriage of justice. Cliffs originally brought the 560 Action in Minnesota court and agreed, in its recent arguments to the Bankruptcy Court, that a Minnesota court should decide these issues. (*See* Adv. D.I. 92 (moving to certify issues to Minnesota Supreme Court).)

Based on the foregoing, Cliffs is not likely to succeed on its argument that the Bankruptcy Court somehow abused its discretion in declining to apply judicial estoppel.

**B.    Irreparable Harm Absent a Stay**

Cliffs has also failed to establish that it will suffer irreparable harm in the absence of a stay of the Remand Order. Irreparable harm is "harm which cannot be redressed by a legal or an equitable remedy following a trial." *Siemens USA Holdings Inc. v. Geisenberger*, 17 F.4th 393, 407-08 (3d Cir. 2021). Cliffs "must demonstrate that irreparable injury is *likely* [not merely possible] in the absence of a stay." *In re Revel AC*, 802 F.3d at 569 (alteration in original).

With respect to the argument that the Bankruptcy Court's failure to stay the 560 Action pending the outcome of the Antitrust Action, and decision to abstain and remand instead, may result in irreparable harm to Cliffs, the Court agrees with the Bankruptcy Court that, "in view of Cliffs' ability to seek a further stay in the Minnesota state court, it is unable to demonstrate that it would suffer an irreparable injury absent a stay from this Court." (Remand Order at 2 n.4.)

Cliffs argues that its risk of irreparable harm is not tied to whether a stay can be requested in state court; as Cliffs concedes, it "retains that ability regardless of the outcome of this motion." (D.I. 13 at 5.) Rather, Cliffs argues that, while "this appeal seeks an extraordinary remedy—and not one commonly seen," this is an extraordinary case because "the removing party now seeks remand in order to make an argument they know has already been rejected by a federal court." (*Id.* at 6-7.)

"What the Mesabi Parties want is to leverage the fact that a federal court is actively deciding these issues (one complete, but interlocutory, and one to be determined at trial) in order to represent to a Minnesota court that Cliffs Minnesota's ownership rights are in doubt and that Mesabi's leasehold interest remains valid." (*Id.* at 5.) The possibilities that (1) the Mesabi Parties will make such argument in a Minnesota state court, and that (2) the "state court will reach a different conclusion (on a matter of bankruptcy law, no less) than the Bankruptcy Court already reached concerning the BLGN lease," are both speculative at best, and Cliffs retains its full range of legal rights in the Minnesota state court; in other words, any potential harm can be redressed by a legal remedy. *See Siemens*, 17 F.4th at 408.

Cliffs further argues that, "[i]f remand issues before this Court hears this appeal, there may be no recompense if Cliffs wins—or, at least, such recourse would implicate difficult questions of comity and federalism." (D.I. 13 at 4.) "Where a party has a statutory right to appeal a remand order, and because remand would effectively render that right 'hollow,'" Cliffs asserts, "courts routinely grant these temporary stays out of respect for Congress' decision to grant such a right." (*Id.* (quoting *Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*, 2016 WL 3346349, at *3 (E.D. Va. June 16, 2016).) But as courts in this district have held, Cliffs is not irreparably harmed solely by virtue of litigating this case in state court during a federal appeal. *See, e.g., Att'y Gen. v. Dow Chem. Co.*, 2024 WL 3361395, at *7 (D.N.J. July 9, 2004) (holding it was not irreparable harm for state litigation to move forward during federal appeal of remand).

Because Cliffs has failed to establish the two main factors warranting the stay of an order pending appeal—that it has a reasonable likelihood of success on the merits or that it would suffer irreparable harm in absence of a stay—the Court need not consider the remaining factors. *In re Revel AC,* 802 F.3d at 571 ("if the movant does not make the requisite showings on either of these first two

factors, the inquiry into the balance of harms and the public interest is unnecessary, and the stay should be denied without further analysis.") (cleaned up).

## IV.    CONCLUSION

Because the Bankruptcy Court recognized that an indefinite further stay of the 560 Action, pending a final non-appealable decision in the Antitrust Action, would have the effect of subordinating the State of Minnesota's interest in ensuring that its lands are put to appropriate and productive use, the Bankruptcy Court concluded that any such decision is best made by the Minnesota courts. (Remand Op. at 17.) Cliffs has failed to show any likelihood of success in demonstrating that the Bankruptcy Court abused its discretion in permissively abstaining from deciding the 560 Action, a non-core matter between non-debtor parties which involves unsettled questions of state law. Cliffs has further failed to show any likelihood of success in demonstrating that the Bankruptcy Court abused its discretion by failing to weigh the risk of inconsistent decisions in its decision to equitably remand the 560 Action to Minnesota state court. Finally, Cliffs has failed to establish that it will suffer irreparable harm in absence of a stay. Based on the foregoing, a stay of the Remand Order is not warranted. An appropriate Order will be entered.

THE HONORABLE GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Date:  April 1, 2025